UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-20043-RAR

**CHARLES W. JOHNSON**,

    Petitioner,

v.

**RICKY D. DIXON**,

    Respondent.[1]
_____/

## ORDER DISMISSING IN PART AND DENYING IN PART HABEAS CORPUS PETITION

**THIS CAUSE** is before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences imposed by the Eleventh Judicial Circuit Court in and for Miami-Dade County in Case No. F11-001796B. *See* Petition [ECF No. 1] ("Pet."). Respondent filed a "Response to Petition for Writ of Habeas Corpus" on May 21, 2021. [ECF No. 6] ("Resp."). Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DISMISSES** Ground One of the Petition as procedurally defaulted and **DENIES** Ground Two of the Petition.

## BACKGROUND

Petitioner was indicted by a Miami-Dade County jury on seven counts: first degree murder with a firearm (Count 1), attempted first degree murder with a firearm (Count 2), four counts of

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections on November 19, 2021. Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The Clerk's Office is **DIRECTED** to make this modification on the docket.

attempted second degree murder (Counts 3, 4, 5, and 6), and shooting or throwing a deadly missile into an occupied vehicle (Count 7). *See* Indictment [ECF No. 7-1] at 140–43. The case proceeded to trial where, on October 5, 2015, a jury found Petitioner guilty of all seven counts as charged in the Indictment. *See* Jury Verdict [ECF No. 7-1] at 145–51. The trial court adjudicated Petitioner guilty and sentenced him to two concurrent life sentences on Counts 1 and 2, four concurrent thirty (30) year sentences on Counts 3 through 6, and fifteen (15) years on Count 7. *See* Sentence [ECF No. 7-1] at 158–63.

Petitioner appealed his conviction and sentence to Florida's Third District Court of Appeal ("Third DCA"). Petitioner raised two arguments on direct appeal: (1) the trial court erred by "allowing the state to improperly bolster the credibility of one of the eyewitnesses by allowing a detective to testify, over the objection of counsel, that he believed of all of the eyewitness'[s] out of court statements were consistent with each other," Direct Appeal Initial Brief [ECF No. 7-1] at 181; and (2) the trial court erred "in denying Mr. Johnson's motion for mistrial after a state witness accused Mr. Johnson of being an 'assassin,'" *id.* at 186. On October 11, 2017, the Third DCA summarily affirmed the trial court in an unwritten opinion; the United States Supreme Court denied Petitioner's petition for writ of certiorari on June 18, 2018. *See Johnson v. State*, 238 So. 3d 788 (Fla. 3d DCA 2017), *cert denied*, 138 S. Ct. 2660 (2018).

On February 4, 2019,[2] Petitioner filed a motion for postconviction relief in the state circuit court pursuant to Fla. R. Crim. P. 3.850. *See* Postconviction Motion [ECF No. 7-2] at 97–137. Petitioner raised seven grounds for relief: (1) trial counsel was ineffective for filing an inadequate motion for judgment of acquittal on all seven counts since "the State's evidence against him was

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

wholly circumstantial and insufficient to support the convictions," *id.* at 105; (2) trial counsel was ineffective for failing to specifically argue that "the State failed to present any evidence on the element of premeditation in [Counts 1 and 2]," *id.* at 111; (3) trial counsel was ineffective for failing to move for a mistrial "based upon State's witness Trudy Carter's prejudicial statement," *id.* at 115; (4) trial counsel was ineffective for failing "to object to the prosecutor's improper comment of bolstering [Trudy Carter's] testimony during closing argument," *id.* at 121–22; (5) trial counsel was ineffective "in misadvising Defendant not to call witness Jeffrey Trotter to testify," *id.* at 123; (6) trial counsel was ineffective for advising "Defendant not to testify at trial," *id.* at 127; and (7) trial counsel was ineffective for failing to "fully and adequately cross-examine victim Lamarkis Yee on his statement given to police," *id.* at 131.

On January 24, 2020, the state postconviction court entered a written order denying all seven grounds of Petitioner's Postconviction Motion. *See* Order Denying Motion for Postconviction Relief [ECF No. 7-2] at 161–67. Petitioner appealed the denial of his Postconviction Motion, but only raised one argument on appeal—that the state postconviction court had erred in denying the fourth claim of his Postconviction Motion without holding an evidentiary hearing. *See* Postconviction Initial Brief [ECF No. 7-3] at 11–12. On September 30, 2020, the Third DCA affirmed the state postconviction court's order in an unwritten opinion. *See Johnson v. State*, 308 So. 3d 114 (Fla. 3d DCA 2020). The Third DCA issued its mandate on November 5, 2020. *See* Mandate [ECF No. 7-3] at 23.

Petitioner then filed his initial Petition for Writ of Habeas Corpus pursuant to § 2254 on December 23, 2020. *See* Pet. The Petition raises the following two grounds for relief:

1. The state trial court erred in allowing the State "to improperly bolster the credibility of one of the eyewitnesses by allowing a detective to testify [to the witness's credibility.]" *Id.* at 16.

2. Petitioner's trial counsel was ineffective for failing to object to the State's "improper and prejudicial" bolstering of its own witness during closing arguments. *Id.* at 17.

## **STANDARD OF REVIEW**

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as an "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up).

"'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). This is because federal courts ordinarily presume that § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum. *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different

grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## ANALYSIS

### A. Procedural Requirements

Before reaching the merits of his § 2254 petition, the Court must first satisfy itself that Petitioner has met the two major procedural requirements imposed by AEDPA: timeliness and exhaustion. *See King v. Chase*, 384 F. App'x 972, 975 (11th Cir. 2010) ("In addition to codifying the total exhaustion requirement, AEDPA created a one-year statute of limitations for federal habeas corpus petitions."). Beginning with the time-bar, AEDPA requires that "a person in custody pursuant to the judgment of a State court" file a habeas corpus petition within a one-year period. *See* 28 U.S.C. § 2244(d)(1). However, a limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining the State may express

its intent to "waive the limitations bar"). Since Respondent concedes that the Petition is timely, the Court will accept this waiver and proceed without commenting further on the Petition's timeliness. *See* Response at 8 ("Because less than [365] days of untolled time had passed since Petitioner's conviction became final when he filed the instant petition for writ of habeas corpus, it appears timely.").

AEDPA also requires a habeas petitioner to exhaust their claims before presenting them in a federal habeas petition. *See Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)); *see also* 28 U.S.C. § 2254(b)–(c). This requirement is met if a petitioner "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure—prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Id.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis added). "In Florida, exhaustion usually requires not only the filing of a [Florida Rule of Criminal Procedure 3.850] motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)).

Similar to the limitations defense, a respondent also has the option to waive an exhaustion defense. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion

requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). Here, while Respondent concedes that Ground Two of the Petition has been properly exhausted and should be reviewed on its merits, *see* Resp. at 14 ("[T]he claim appears exhausted for federal habeas review."), Respondent also argues that Ground One of the Petition is unexhausted because "[Petitioner] failed to bring his specific constitutional claim to the attention of the state courts," *id.* at 10. Specifically, Respondent states that—although Ground One currently alleges a violation of due process—Petitioner's original state court claim "was based on state law" and "did not mention the United States Constitution or federal due process." *Id.* at 11; *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) ("Because the gravamen of his claim, as presented to the state courts, dealt with state law, we held that the petition failed to exhaust his federal claim."). Consequently, the Court shall review the exhaustion status of Ground One but proceed directly to a merits review of Ground Two.

### B. *Ground One*

In his first ground, Petitioner claims that his right to due process under the Fourteenth Amendment was violated when the trial court allowed the Assistant State Attorney to improperly bolster the credibility of an eyewitness by questioning a detective about the consistency of that eyewitness's statements. *See* Pet. at 16. Respondent counters that Ground One is procedurally defaulted because—as previously mentioned—Petitioner "failed to bring [this] specific constitutional claim to the attention of the state courts." Resp. at 10. Respondent also argues that, even if this Court reaches the merits of the claim, there was no constitutional error since "[t]he detective's testimony in this case did not comment on Suave Dorsett's credibility, nor describe him as truthful." *Id.* at 13. The Court concurs with Respondent that the claim has not been exhausted and must be dismissed as procedurally defaulted.

It is undisputed that Petitioner raised a similar claim in state court. One of Petitioner's arguments on direct appeal was that "the trial judge erred in allowing the detective [to] bolster the credibility of a crucial eyewitness . . . by allowing the detective to testify that in his opinion all of witness['s] out of court statements concerning his identification of [Petitioner] were consistent with each other." Direct Appeal Initial Brief [ECF No. 7-1] at 185. While Ground One and Petitioner's argument on direct appeal are undoubtedly similar, "adjacent claims or nominally similar claims do not make the cut" in satisfying AEDPA's exhaustion requirements. *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1158 (11th Cir. 2022). The Eleventh Circuit has repeatedly stated "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (cleaned up). "Ultimately, to exhaust state remedies fully, the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Preston*, 785 F.3d at 457 (cleaned up).

In reviewing the Initial Brief, it is obvious that Petitioner never relied upon, cited, or even referenced the Due Process Clause of the Fourteenth Amendment (or any other matter of constitutional or federal significance) when he presented this claim to the state court. *See generally* Direct Appeal Initial Brief [ECF No. 7-1] at 181–86. The Initial Brief was wholly dependent on Florida law and only argued that improper bolstering of a witness ran afoul of Florida's evidentiary rules and procedures. *See id.* When a petitioner's state court claim "[does] not cite a single federal case, and relie[s] instead on a panoply of Florida cases," the district court must dismiss the petitioner's companion federal claim as unexhausted. *Preston*, 785 F.3d at 458. Respondent correctly identifies that the federal nature of Ground One was argued for the first time in the instant

Petition and not in a previous state court proceeding; therefore, dismissal is required. *See* Resp. at 11 ("Petitioner's failure to exhaust his federal due process claim in the state courts renders it procedurally defaulted on habeas review.").

Admittedly, Petitioner's Initial Brief contains a citation to *United States v. Dennis*, 786 F.2d 1029 (11th Cir. 1986), but that paltry federal "cameo" is sandwiched in the middle of an eight-case string cite (seven of which are Florida state court decisions). *See* Direct Appeal Initial Brief [ECF No. 7-1] at 181. The Eleventh Circuit dealt with a nearly identical situation in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005). In *McNair*, the court considered whether the citation to a federal case "which was one of seven cases included in a string citation" along with a perfunctory reference to several constitutional amendments during the petitioner's state court proceedings was sufficient to exhaust that claim for habeas purposes. *Id.* at 1303. The court found that these brief references were "exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement." *Id.* (citing *Kelley*, 377 F.3d at 1344–50). The Eleventh Circuit further found that the petitioner's claim "relied on state law opinions to argue a state law claim under a state law standard," which meant that the petitioner "did not fairly present his federal constitutional claim to the state court." *Id.* at 1304; *see also Preston*, 785 F.3d at 458 ("[A] petitioner with a claim that could arise under state or federal law must clearly indicate to the state courts that he intends to bring a federal claim."). In short, Petitioner's brief mention of *Dennis* was not sufficient to alert the state court to the federal nature of this claim.

Finally, the Court must consider whether Petitioner can overcome his procedural default. The Supreme Court has instructed the lower courts that a procedural default can be excused if the petitioner shows either "cause and prejudice to excuse the default," or that "the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying

offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Unfortunately for Petitioner, neither of these exceptions apply because Petitioner has failed to allege that he was either prevented from raising the federal nature of Ground One in state court or that he is "actually innocent" of the charges against him. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice.").[3] Since Petitioner failed to exhaust Ground One, and there is no excuse for this procedural default, the Court **DISMISSES** Ground One.

C. **Ground Two**

In Ground Two, Petitioner argues that his trial counsel failed to object after the state court prosecutor "made an improper comment bolstering its witness Trudy Carter['s] trial testimony" during closing arguments. Pet. at 17. Although Petitioner does not specifically cite the offending comment in his Petition, his Postconviction Motion identified this statement as improper:

> You heard about the altercation out front of Luvonia's house, and you also heard about some old fashion[ed] chivalry. I guess it still exists, because David Walker, visiting from Arizona, half-brother of Suava Dorsett, saw what was going on with Shaneka, stood out of the car, and said, 'Stop. Why don't you do that to a man?'"

Trial Tr. [ECF No. 8-11] at 156. Although the Petition is woefully lacking in specifics, Petitioner seems to allege that the prosecutor's comment was an act of subterfuge meant to convey to the jury that Mrs. Carter's testimony was referencing a violent altercation that took place hours before the shooting occurred between David Johnson, Petitioner's brother and codefendant, and two of

---

[3] In some circumstances, the court can provide a habeas petitioner with an additional opportunity to exhaust an otherwise procedurally defaulted claim in state court. *See Kelley*, 377 F.3d at 1351 (holding that the district court should give the petitioner "the choice of returning to state court to exhaust his claims or of amending and resubmitting the habeas petition to present only exhausted claims"). This "second chance" does not apply here since Ground One "can no longer be litigated on the merits in state court because they are procedurally barred." *Id.* Under Florida law, "a claim of trial court error generally can [only] be raised on direct appeal," *Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001), and Petitioner is precluded from conducting a second direct appeal, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the Petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar habeas relief.").

the victims, David Walker and Shenika Williams, which was a violation of the trial court's ruling on a motion in limine. *See* Pet. at 17 ("The State sought to admit evidence that . . . David Johnson drove to the residence and confronted Shenika . . . he then grabbed her and battered her by banging her head on top of the car 4–5 times."); *see also* Postconviction Motion [ECF No. 7-2] at 122 ("Defendant would argue that the improper comment of bolstering Trudy Carter's testimony without a doubt indicated a strong assumption that co-defendant David Johnson did some act to Shenika Williams that caused David Walker to react.").

To begin, the Court must apply the deferential standard of § 2254(d). Petitioner raised the substance of this claim to the state court on collateral review and then subsequently appealed its denial to the Third DCA. *See* Postconviction Initial Brief [ECF No. 7-3] at 11–12; Postconviction Motion [ECF No. 7-2] at 120–23. Although the Third DCA did not explain why it affirmed the lower court, this Court can assume that it adopted the reasoning of the state postconviction court's written order. *See Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). The state postconviction court found that "[e]ven if the Court concludes that trial counsel could have or should have objected to the statement, there is nothing in the record to support that this statement would have been anything other than harmless error given the overwhelming evidence of guilt in this case." Order Denying Postconviction Motion [ECF No. 7-2] at 166. In short, Petitioner is only entitled to relief on this claim if the Court determines that the state postconviction court either unreasonably applied federal law or that its factual findings were unreasonable. *See* 28 U.S.C. § 2254(d).

Respondent argues the prosecutor's comment "[did] not constitute improper bolstering," and that counsel could not have been ineffective for failing to object on that basis. Resp. at 16. In the alternative, Respondent asserts that Petitioner cannot meet the *Brecht* harmless error standard "since the jury had more than sufficient evidence of Petitioner's guilt." *Id.* The Court agrees with Respondent. To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel's performance can only be considered deficient if the "petitioner [establishes] that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). This deficient performance only results in prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, trial counsel's performance would not be deficient unless his "failure to object to any improper bolstering was a serious error and one that competent counsel would not have made." *Blackmon v. Sec'y, Dep't of Corr.*, 34 F.4th 1014 (11th Cir. 2022).

A prosecutor improperly bolsters his or her own witness when "the government places its prestige behind the witness, or when the government suggests that information not presented to the jury supports the witness's credibility." *United States v. Reeves*, 742 F.3d 487, 502 (11th Cir. 2014); *accord Spann v. State*, 985 So. 2d 1059, 1067 (Fla. 2008) ("Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony."). To understand if the

prosecutor's comment could be construed as improper bolstering, the Court must first ascertain what Mrs. Carter said on direct examination. The relevant portion of the transcript is as follows:

> [Q:] [D]id you see an altercation that occurred between Shenika and David Johnson?
>
> A: Yes.
>
> [Defense Counsel:] Object. No. I'll withdraw the objection.
>
> [A:] Yes.
>
> Q: Okay. Did there come a time, Mrs. Carter, when David Walker got out of the car and confronted David Johnson?
>
> [Defense Counsel:] Objection.
>
> [ . . . . ]
>
> The Court: Overruled.
>
> [A:] Yes.
>
> [ . . . . ]
>
> [Q:] Mrs. Carter, did you hear words exchanged between David Walker and David Johnson?
>
> A: Yes.

Trial Tr. [ECF No. 8-9] at 59–61. On its face, this testimony appears to be extremely limited. Although Mrs. Carter referred to an "altercation" between Shenika Williams and David Johnson, she did not specifically state what occurred during the "altercation," nor did she recount the contents of the conversation between David Walker and David Johnson. *See id.* In fact, the trial court itself prevented her from doing so pursuant to the aforementioned motion in limine. *See id.* at 60 ("The Court: Hang on. Hang on. Don't answer the question, please. . . . I'm less worried about the hearsay. I'm more concerned—was she instructed on the pretrial ruling?").

In the Court's view, the real issue buried in this claim is whether it was improper for the prosecutor to claim during closing arguments that David Walker told David Johnson, "Stop. Why don't you do that to a man?" Trial Tr. [ECF No. 8-11] at 156. Neither Mrs. Carter nor David Walker himself testified that those specific words were said.[4] Therefore, Petitioner's concern is that the prosecutor's reference to this statement—which was never actually said by a witness during the trial—"impl[ied] evidence not presented to the jury" which would allow the jury to infer that the "altercation" mentioned by Mrs. Carter was physical in nature. *United States v. Johnson*, 277 F. App'x 890, 896 (11th Cir. 2008).

While the Court agrees that there was no testimony at trial that David Walker specifically used the phrase "Stop. Why don't you do that to a man?", David Walker <u>did</u> testify that he asked David Johnson to "do it to me." Trial Tr. [ECF No. 8-8] at 194. Therefore, it is already dubious that the offending argument utilized "evidence not presented to the jury" when David Walker had testified that he made a very similar comment to David Johnson. *Johnson*, 277 F. App'x at 896. In addition, Petitioner has made a colossal (and speculative) leap that the jury would link this phrase back to Mrs. Carter's testimony and then assume that she had meant that a violent physical altercation had occurred between David Johnson and Shenika Williams. Such a speculative and tenuous argument is insufficient to prove improper bolstering or any other constitutional violation. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("This kind of speculation is insufficient to carry the burden of a habeas corpus petition.") (internal quotation omitted).

---

[4] In fact, the Assistant State Attorney instructed David Walker to answer in a specific way to prevent him from accidentally running afoul of the trial court's evidentiary ruling. *See* Trial. Tr. [ECF No. 8-8] at 192 ("One of Mr. Walker's comments to David Johnson was, 'Why don't you beat on a man instead of a woman?' . . . [J]ust testify to the jury, 'Why don't you do that me?' And we'll keep it general like that. Okay?"). The clear purpose of this testimony was to allow the witnesses to testify that there had been a previous confrontation between the victims and one of the codefendants—without revealing that the codefendant, David Johnson, had physically attacked Shenika Williams prior to the shooting.

More to the point, the Court fully agrees with the state postconviction court that—if any error did occur—it was utterly harmless in light of the overwhelming evidence of Petitioner's guilt. As Petitioner himself acknowledged, the purpose of Trudy Carter and David Walker's testimony was to show that a motive existed for the shootings. *See* Postconviction Motion [ECF No. 7-2] at 122 ("The State's theory for introducing [this episode] was to show the defendant's motive of being involved in the aforementioned crimes."). However, the State's evidence of Petitioner's involvement in the shooting was more concrete than hypothesizing that Petitioner and his brother had a motive. In fact, as the state postconviction court itself noted, there were multiple eyewitnesses—all of whom knew Petitioner and/or his brother personally—that saw Petitioner participate in the shooting. *See, e.g.*, Trial Tr. [ECF No. 8-7] at 191–93 (testimony from Shenika Williams that David Johnson and another person "started shooting into the vehicle"); Trial Tr. [ECF No. 8-8] at 130–42 (testimony from Lamarkais Yee identifying Petitioner as the second gunman and claiming that Petitioner was brandishing an AK-47); Trial Tr. [ECF No. 8-9] at 162–63 (testimony from Suava Dorsett that Petitioner "had me and my cousin at gunpoint"); *see also* Order Denying Postconviction Motion [ECF No. 7-2] at 165 ("While the Defendant is correct that there was no physical evidence, he is wrong in his assertion that the case against him was insufficient. The evidence of guilt on all seven counts was overwhelming[.]"). The *Brecht* harmless error standard cannot be satisfied since there is no "reasonable probability that the error contributed to the conviction or sentence." *Mansfield*, 679 F.3d at 1313 (citing *Mason*, 605 F.3d at 1123). In other words, even if improper bolstering occurred, this error did not have a "substantial and injurious effect or influence" on the jury's verdict because there was "overwhelming" evidence supporting Petitioner's conviction. *Id.* For these reasons, Ground Two of the Petition is **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not find the correctness of the Court's disposition of Grounds One and Two debatable or wrong. Accordingly, the Court denies the issuance of a COA.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DISMISSED in PART** and **DENIED in PART**.  Ground One of the Petition is **DISMISSED** as procedurally defaulted.  Ground Two of the Petition is **DENIED**.  Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.  Accordingly, this case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 10th day of June, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Charles W. Johnson
      DC # M05576
      Okeechobee Correctional Institution
      Inmate Mail/Parcels
      3420 NE 168th Street
      Okeechobee, FL 34972
      PRO SE

      Michael W. Mervine
      Office of the Attorney General
      444 Brickell Avenue, Suite 650
      Miami, FL 33131
      Email: CrimAppMIA@MyFloridaLegal.com